The Honorable Monica J. Benton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALLISON LANCE WATSON,<br><br>Defendant. | No. CR04-0066P(MJB)<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>HEARING SCHEDULED:<br>December 16, 2004 at 10:00 am. |

## I. INTRODUCTION

Allison Watson appears before the Court for sentencing on a petty misdemeanor offense under 18 U.S.C. § 402. For the reasons set forth below, Allison respectfully requests this Court to sentence her to probation for six months.

## II. SENTENCING RECOMMENDATION

The U.S. Attorney charged Allison with this petty offense after *abandoning* a four-count felony perjury indictment that arose out of Allison's multi-hour appearance before a federal grand jury on October 23, 2003. Not only did federal prosecutors abandon those felony charges, but they promised not to charge Ms. Watson with *any* additional criminal conduct based on upon evidence in their possession (including evidence of any alleged arson, chicken release or other purported crimes), and, in an extraordinary commitment,

DEFENDANT'S SENTENCING
MEMORANDUM – Page 1
NO. CR04-0066P

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

they also promised *never to call her before a grand jury again relating to any pending investigation.* See Ex. A (Stipulated Order For Dismissal of Indictments With Prejudice).

Why did federal prosecutors dismiss felony charges and then make these extraordinary promises to Allison? Why did they then go on to charge her with a petty misdemeanor for failing to further answer questions from the prosecutor in the grand jury instead of seeking more serious contempt charges? The reasons are clear: the government's felony prosecution of Allison was *untenable* and *unfair*, and the government desperately needed an exit strategy as trial approached on the perjury charges. The government's prosecution of Allison was untenable because the prosecutors failed to preserve evidence critical to their prosecution (grand jury transcripts relevant to Allison's defense had been destroyed by the U.S. Attorney's Office and were as a result unable to be produced upon Judge Pechman's order). The prosecution was unfair because prosecutors set a "perjury trap" for Ms. Watson that would have precluded her conviction. *See United States v. Chen*, 933 F.2d 793, 796 (9th Cir. 1991) (perjury trap defense exists where "government's *primary purpose* of obtaining testimony from [the witness is] to prosecute h[er] later for perjury"). At trial, Allison would have shown that prosecutors brought her before the grand jury for the purpose of tricking her into making statements that would form the basis of perjury charges – an improper purpose that indeed did lead to the dismissal of the charges.

On September 10, 2004, after dismissing the perjury charges, prosecutors subpoenaed Allison to the grand jury for questioning on the very subject matters about which she had been questioned on October 23, 2003. A portion of the transcript of her testimony is attached hereto as Ex. B. As shown in the attached transcript, Allison respectfully declined to answer further questions because she had previously cooperated by providing extensive testimony and had been unfairly charged with perjury as a result. Allison also made it clear in her statement that she had no involvement in arson – a

DEFENDANT'S SENTENCING
MEMORANDUM – Page 2
NO. CR04-0066P

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

statement that prosecutors have never challenged with credible evidence. It is noteworthy that not a single grand juror asked a question of Allison during her most recent appearance. Given these circumstances, it is unsurprising that prosecutors decided to charge Allison with the lowest form of "contempt" as a result of her decision to decline to provide further cooperation.

Incarceration of Allison for commission of this petty offense, in light of this procedural history, is not warranted. When prosecutors brought their initial perjury charges, they obtained an *arrest warrant* and sought her arrest by sending federal agents to her home – a highly unusual action in a case like this where Allison posed no danger or flight risk. (Indeed, Allison was subsequently released on bond.) Prosecutors insisted that Allison not be permitted to travel overseas as a condition of her pretrial release – these travel restrictions have hindered, among other things, her ability to fulfill many of the goals of her work with the internationally recognized non-profit organization Sea Shepard Conservation Society, where she continues to be employed today. The felony charges were also widely publicized in local newspapers (the lead federal prosecutor could even be heard on National Public Radio talking about the case), and, as a result, unfairly tarnished her reputation in light of the subsequent dismissal. Finally, it is very noteworthy that, although Allison is charged with "contempt," she in fact provided the government with hours of testimony under oath on the subjects of the investigation – thus further mitigating the impact of her "wrongful" conduct.

### III. CONCLUSION

Allison Watson paid a dear price for agreeing to cooperate with prosecutors on October 23, 2003 by testifying for hours about the matters being investigated by the U.S. Attorney. After providing that testimony, prosecutors charged her with four counts of perjury, issued a warrant for her arrest, imposed travel restrictions on her, and proceeded to publicize their indictment against her, only to dismiss it eight months later. In light of these

DEFENDANT'S SENTENCING
MEMORANDUM – Page 3
NO. CR04-0066P

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800   F 206.516.3888

circumstances, Allison Watson respectfully requests the Court sentence her to a six-month term of probation. This sentence is not only fair in light of her conduct, but it will also enable her to continue to work, and to care for her husband and elderly mother, without disruption.

DATED: December 10, 2004.

Respectfully submitted,

YARMUTH WILSDON CALFO PLLC

By: s/Angelo J. Calfo

Angelo J. Calfo, WSBA #27079
Karin Bornstein Swope, WSBA #24015
925 Fourth Avenue, Suite 2500
Seattle, WA 98104
Phone: (206) 516-3800
Fax:    (206) 516-3888
Email: acalfo@yarmuth.com

Attorneys for Defendant Allison Watson

DEFENDANT'S SENTENCING
MEMORANDUM – Page 4
NO. CR04-0066P

YARMUTH WILSDON CALFO PLLC
THE IDX TOWER
925 FOURTH AVENUE, SUITE 2500
SEATTLE WASHINGTON 98104
T 206.516.3800  F 206.516.3888

# Exhibit A

```
___FILED    ___ENTERED
___LODGED   ___RECEIVED
```

SEP - 3 2004

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

Judge Pechman

04-CR-00066-ORD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ALLISON L. WATSON,

    Defendant.

NO. CR04-0066P

STIPULATED ORDER FOR DISMISSAL OF INDICTMENTS WITH PREJUDICE

Come now the United States of America, by and through John McKay, United States Attorney for the Western District of Washington, and Andrew C. Friedman and J. Tate London, Assistant United States Attorney for said District, and the defendant, ALLISON L. WATSON, and her attorney, Angelo J. Calfo, and stipulate and agree that the Indictment and Superseding Indictment against ALLISON L. WATSON in this case be dismissed with prejudice on the following terms:

(1) The United States will not prosecute ALLISON L. WATSON for any crimes based upon evidence now in the United States' possession.

(2) The United States will not subpoena ALLISON L. WATSON, or cause any subpoena to be issued to ALLISON L. WATSON, relating to any pending investigation. The United States may subpoena ALLISON L. WATSON in grand jury investigations, or other proceedings, with respect to matters that arise after the date of this dismissal.

STIPULATED ORDER FOR DISMISSAL OF INDICTMENTS WITH
PREJUDICE/WATSON [CR04-0066P] -1

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101
(206) 553-7970

(3) Both parties agree to bear their own attorneys' fees and costs, including, without limitation, any attorneys' fees or costs that might otherwise be covered under the Hyde Amendment, Pub. L. No. 105-119(1997).

(4) This stipulation shall be subject to specific enforcement by this Court.

DATED this 1st day of September, 2004.

Respectfully submitted,

JOHN McKAY
United States Attorney

ANDREW C. FRIEDMAN
Assistant United States Attorney
E-mail: Andrew.Friedman@usdoj.gov

J. TATE LONDON
Assistant United States Attorney
E-mail: Tate.London@usdoj.gov

United States Attorneys Office
601 Union Street, Suite 5100
Seattle, WA 98101-3903
Telephone: (206) 553-7970
Fax: (206) 553-0882

ANGELO J. CALFO
Attorney for Allison L. Watson

Yarmuth Wilsdon Calfo P.L.L.C.
1025 Fourth Avenue, Suite 2500
Seattle, Washington 98104
Telephone: (206) 516-3800
Fax: (206) 516-3808
acalfo@yarmuth.com

STIPULATED ORDER FOR DISMISSAL OF INDICTMENTS WITH
PREJUDICE/WATSON [CR04-0066P] -2

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ORDER

Based upon the stipulation of the parties, the Indictment and Superseding Indictment against Allison L. Watson are hereby DISMISSED with prejudice on the terms set forth in the parties' stipulation.

DATED this __2__ day of September.

MARSHA J. PECHMAN
UNITED STATES DISTRICT JUDGE

STIPULATED ORDER FOR DISMISSAL OF INDICTMENTS WITH
PREJUDICE/WATSON [CR04-0066P] -3

UNITED STATES ATTORNEY
601 UNION STREET, SUITE 5100
SEATTLE, WASHINGTON 98101
(206) 553-7970

# Exhibit B

```
                                                              Page 1
 1              BEFORE THE FEDERAL GRAND JURY
            FOR THE WESTERN DISTRICT OF WASHINGTON
 2                      AT SEATTLE
 3
 4   RE THE INVESTIGATION OF       )
 5                                 )   GRAND JURY NO. 03-1
 6   GINA LYNN and JOSH TRENTOR    )
 7   ---------------------------------------------------------
 8   Taken at U.S. Courthouse, Third Floor, Seattle,
 9   Washington.
10
11   APPEARANCES:   ANDREW FRIEDMAN, ESQ.
12                  J. TATE LONDON, ESQ.
13                  Assistant United States Attorneys
14                  601 Union Street, Suite 5100
15                  Seattle, WA 98101
16
17
18
19
20
21
22
23
24   DATE: September 10, 2003
25   REPORTED BY: Jill L. Cheeseman, RPR, CCR 2404
```

Page 2

1           Seattle, Washington, Wednesday, September 10, 2003
2                       -------------
3           (The following occurred at 3:15 p.m.)
4           MR. FRIEDMAN: I think we've both been in front of
5    you. I'm Andrew Friedman, and this is Floyd Short. We're
6    here for the start of probably an investigation of what's
7    sort of an old case but on ongoing problem. It has to do
8    with environmental terrorism, domestic terrorism. It's
9    these folks run around doing animal release, like the mink
10   release that was in the news about a week ago -- I don't
11   know if you saw it, but there were about 10,000 mink
12   released from mink farms up in Snohomish County -- and
13   arsons. They tend to burn down buildings. And they do it
14   as part of -- sort of under the aegis of two umbrella
15   organizations, something called the Animal Liberation
16   Front and Environmental Liberation Front; and it's hard to
17   figure out who these people are and how to catch them
18   because there's a million places around the country they
19   could show it. It can be a car dealership, new house
20   someone is building and someone shows up at 2 a.m. and
21   burns it down. And they're good at covering their tracks.
22          We have a number of these cases that have taken place
23   in this district over the year. The most prominent is the
24   fire at the University of Washington a couple years ago.
25   We've taken a new look at some of them, and a couple of

SEATTLE DEPOSITION REPORTERS
www.seadep.com           (206)622-66661 * (800)657-1110              FAX: (206)622-6236
ef964c33-4d64-4b3b-bfcf-0dfc355ef34a
EXHIBIT A

Page 3

1  them we have suspects. Unfortunately it's not the
2  University of Washington, but there's a couple that we're
3  sort of further ahead on in figuring out who did that.
4      The one we're going to focus on first is an arson
5  outside of the City of Olympia and a chicken release that
6  same night. It may be that you can only get them for the
7  arson, which is significant. It's $150,000 worth of
8  damage. It may well be the person that did the University
9  of Washington fire. So if we can get them for one arson
10 or another, we may be solving the problem even if we can't
11 solve the biggest one.
12     Today what I was going to do is bring in the case
13 agent on these two things I told you about Fernando
14 Gutierrez from the FBI to give you a background; and we
15 subpoenaed a witness Allison Watson, a member of the
16 animal rights movement and has connection to these two
17 incidents. She has been talking to her lawyer, is going
18 to take the Fifth Amendment maybe not the first question
19 but by about the second question. So I anticipate it will
20 be pretty fast. And we will then figure out what to do.
21     My guess is we'll seek immunity for her and be back
22 in a month with her and sort of start taking it from
23 there. So if anyone has any questions --
24     JUROR: On the jurisdiction piece, how does that
25 work?

Page 4

1        MR. FRIEDMAN: What are the federal crimes?
2        JUROR: Yes.
3        MR. FRIEDMAN: The basic federal crime is an
4    enterprise terrorism. If you do something to an
5    organization because it does research on animals,
6    something like that, it's a crime, Title 18 U.S. Code.
7    That's been changed a number of times over the years.
8        So if you look back at 2000 when these particular
9    events happened, you had to do $10,000 worth of damage in
10   order for it to be a crime. That's not true anymore now.
11   Less than $10,000 is a misdemeanor and above a felony.
12   But the federal crimes for the two episodes we're looking
13   at here Title 18, U.S. Section 844, basically prohibits
14   arson. You can't use fire to destroy a building, and so
15   you're going to hear about an arson.
16       There's something called the Hobbs Act which is
17   interfering with interstate commerce by violence and
18   extortion. If they go in and steal chickens and the farm
19   is operating in interstate commerce, which almost
20   everything is, that's a Hobbs Act violation. If we link
21   people to a number of different things, we are looking at
22   whether we can charge it as a R.I.C.O. violation, where
23   you have repeated acts that are interfering. The mink
24   farms here are operating in interstate commerce. It's not
25   all. Those would be the crimes we would be looking at.

www.seadep.com                SEATTLE DEPOSITION REPORTERS                 FAX: (206)622-6236
                              (206)622-66661 * (800)657-1110
                                                                           ef964c33-4d64-4b3b-bfcf-0dfc355ef34a
                                                                           EXHIBIT A

Page 5

1           (See the testimony of Fernando Gutierrez.)
2           JUROR: He has a good one. He said they were sent to
3   foster homes.
4           JUROR: Foster Farms.
5           MR. FRIEDMAN: We're worried the new mink that have
6   been released, which are eating geese and other stuff, may
7   be getting to these chickens. We just brought Agent
8   Gutierrez in to give you a background to talk a little
9   about ELF and ALF and these two specific things. There
10  have been -- we're sort of taking a new look at these
11  cases which have languished around, and people obviously
12  look at -- there's been a certain amount of laughter here,
13  the chicken release, and that's partly why we're in the
14  hole we're in.
15          When this was originally investigated by other FBI
16  agents, which you will never see, three years ago, they
17  didn't do the obvious things. They didn't get the
18  clothes, which would show stuff from the chicken farm or
19  accelerant. They should have gotten the truck and
20  searched the truck. That stuff is all long gone, so we
21  can't do that, so we have to figure out other ways to
22  figure out what went on and to prove it to you. We're
23  sort of gathering all of the evidence and seeing if
24  there's any way we can revive or resuscitate the case, if
25  we can link it to other cases.

SEATTLE DEPOSITION REPORTERS
www.seadep.com          (206)622-66661 * (800)657-1110          FAX: (206)622-6236
ef964c33-4d84-4b3b-bfcf-0dfc355ef34a

EXHIBIT A

Page 6

1    You are going to hear about the Brainard mink farm
2    case over time because we know some of the people there.
3    The question there is can you find a federal crime that
4    fits that case. We know who did it, but there may not be
5    $10,000 worth of damage. You need to show an interstate
6    nexus. That may make it hard to find a federal crime for
7    it. So we're trying to find what we can do with this.
8    In terms of trying to figure out the arson and
9    chicken farm, the first witness we'll call is Allison
10   Watson, the woman who rented the truck. You would hope
11   she would have a good explanation why she rented a truck
12   for a one-way trip from California for people not moving
13   to California. They come up from California and going
14   home. They presumably didn't have a lot of stuff to
15   transport back from California. They might have needed a
16   truck because it takes a certain amount of space to hold
17   250 chickens, is the most logical inference we have for
18   it.
19   We have subpoenaed her as kind of a starting point
20   and realized that down the line we're going to have some
21   hard questions. If this case had been investigated fully
22   from the first moment, it might be that you could charge
23   all three people. It may be we have hard decisions to
24   reach down the line to you say we can't charge all three;
25   but if we have the evidence we have and we get one of the

www.seadep.com     SEATTLE DEPOSITION REPORTERS     FAX: (206)622-6236
(206)622-66661 * (800)657-1110
ef964c33-4d64-4b3b-bfcf-0dfc355ef34a

EXHIBIT A

```
 1    three to say, "Here's what we do," do you have enough
 2    evidence to charge two people, our thought was the logical
 3    first step was Allison Lance Watson, what she says about
 4    the truck, who she says she gave it to, what she tells
 5    you.
 6         The problem is she is not going to tell us much
 7    today.  She is going to tell us her name, and that's going
 8    to be about the limit.  And then we probably should go
 9    back to the Department of Justice, get permission to
10    immunize her.  She'll have to come in and talk.
11         We can't charge her to tell you the truth.  If she
12    still doesn't want to talk, we can ask a judge to hold her
13    in contempt until she is willing to talk.  If she willing
14    to talk, it's one step towards saying can we prove these
15    three people did what they did.
16         Any questions for me before we call in the witness?
17         (See testimony of Allison Watson)
18         MR. FRIEDMAN:  I should have asked if anyone else
19    wanted to ask questions, but I figure a month from now
20    might be more productive.
21         JUROR:  Where does she get off?
22         MR. FRIEDMAN:  She wouldn't shake our hands this
23    morning.  Our intention is to get an immunity order
24    compelling her to talk to you and see what happens in a
25    month.  Anyone have any comments before we stand out?
```

Page 8

1   JUROR: Sure you want to give her immunity?

2   MR. FRIEDMAN: The immunity makes it hard to
3   prosecute someone if ultimately you decide you want to
4   prosecute her for the arson. Giving her immunity does
5   make it hard.

6   Our thought is we're so far behind the eight ball we
7   are not going to be able to prosecute for the arson. She
8   is going to say, "I rented the truck; I don't know why; I
9   didn't know what they were going to do to it." If we want
10  to get to where we want to, we have to give it to her. If
11  she perjures herself, we'll prosecute her for it.

12  JUROR: The immunity is for the questions you ask.

13  MR. FRIEDMAN: It's not blanket, but it's hard not to
14  be tainted by what happens in here. Once we have given
15  her the immunity, it gets hard to bring substantive
16  charges later because we have to show that what she said
17  in here didn't contribute to the prosecution. You almost
18  have to bring in two new prosecutors to do it who didn't
19  know what happened in here, who didn't see the record; and
20  then as the investigation goes forward she said something
21  that helps us do the next thing, help someone else say
22  something and that comes back against her. So it may be
23  tainted. There is a downside, but we don't have another
24  good idea of how to go forward at this stage.

25  We'll see you in four weeks. We know her home phone

www.seadep.com   SEATTLE DEPOSITION REPORTERS   FAX: (206)622-6236
(206)622-6666 * (800)657-1110
ef964c33-4d64-4b3b-bfcf-0dfc355ef34a

EXHIBIT A

```
                                                              Page 9
1   number, so we will be able to tell who she calls after
2   today.  If we can figure out additional phone numbers --
3   which I was hoping she would give you those.  If we can
4   figure out her cell phone number, we can figure out who
5   she is calling, if she is calling folks we're interested.
6                         * * * * *
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

SEATTLE DEPOSITION REPORTERS
www.seadep.com    (206)622-66661 * (800)657-1110    FAX: (206)622-6236
ef964c33-4d64-4b3b-bfcf-0dfc355ef34a

EXHIBIT A

```
                                                          Page 10
  1                    C E R T I F I C A T E
  2              I certify that the foregoing is a full and
  3    correct transcript of the proceedings in the
  4    above-entitled matter.
  5              Dated this 23rd day of July 2004.
  6
  7    _____
  8    Reporter
       Commission expires August 18, 2007.
  9
 10
 11
 12
 13
 14
 15
 16
 17
 18
 19
 20
 21
 22
 23
 24
 25
```

www.seadep.com          SEATTLE DEPOSITION REPORTERS          FAX: (206)622-6236
                        (206)622-66661 * (800)657-1110
                        ef964c33-4d64-4b3b-bfcf-0dfc355ef34a

EXHIBIT A